FILED
2002 JUN 11 AM 9:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

THOMAS O'DELL JOHNSON,

    Plaintiff,

vs.                        CASE NO. CV-01-J-1183-NW

JAMI, INC., and ABCO, INC.,

    Defendants.

ENTERED
JUN 11 2002

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 19), evidence in support of said motion and a memorandum of law. The plaintiff submitted a response thereto and filed evidence in support of his opposition (doc. 22), to which the defendants have submitted a reply.

Plaintiff commenced this action by filing a complaint alleging the defendant discriminated against him on the basis of race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Upon consideration of the pleadings, memoranda of the parties and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.

## FACTUAL BACKGROUND

The plaintiff began working for defendant in 1995, first on the paint line, and then as a welder. *See e.g.* defendant exhibit F; plaintiff depo. at 27, 106-107, 114. The plaintiff was

26

a good welder. Plaintiff depo. at 113. Plaintiff's supervisor beginning in November, 1999 was Bruce Morgan, and his "lead" person was Randy Faulkner.[1] Morgan depo. at 22-23; plaintiff depo. at 24. The plaintiff was terminated for violating the attendance policy by his absence on April 24, 2000. Morgan depo. at 116. The plaintiff asserts he was terminated under the new attendance policy, which did not take effect until May 1, 2000. *See* Faulkner depo. at 98. The defendant asserts the termination was under the policy in effect at the time of his termination.

Under the old termination policy, unexcused absences were assigned points. Morgan depo. at 27. The accumulation of eight points within a "rolling" one year period could result in termination if the employee had received a "final, written notice." *Id.* at 27-29. A point took a year to roll off. *Id.* Under the new system, points roll off in sixty days to ninety days. *Id.* at 27-28. However, an employee is not entitled to "final, written notice" prior to termination. *Id.* at 29. Under the old system, employees were sometimes allowed to use accumulated vacation time to prevent accumulating points for unexcused absences. *Id.* at 30, 33; Faulkner depo. at 39-40. Allowing vacation time to be used in this manner was discretionary and an exception to the general rule that vacation times had to be requested in advance of the absence. Morgan depo. at 36, 39, 60.

As of January 23, 2000, the plaintiff had the requisite eight points for termination. Morgan depo. at 52. The plaintiff asserts that Morgan told him in February, 2000 that he was

---

[1] A lead person was not a supervisor and did not have the ability to fire, give pay raises, transfer, or demote. Plaintiff depo. at 25. He is an hourly employee who ensures daily schedule attainment. Morgan depo. at 23-24.

close to "pointing out" so he should use a vacation day if he had to call in sick. Plaintiff depo. at 141; Faulkner depo. at 99. Morgan states that, at the February 21, 2000 meeting with the plaintiff, the plaintiff was given a final warning and an additional final warning rather than a termination notice. Morgan depo. at 40, 44. These warnings were due to the January 23, 2000 absence. *Id*. at 54.

On April 24, 2000, the plaintiff called in sick, but could not get in touch with Morgan. He spoke with Faulkner and asked him for permission to use a vacation day. Plaintiff depo. at 152, Faulkner depo. at 100. Faulkner prepared the paper work. Faulkner depo. at 37-38. Morgan did receive a voice mail stating that the plaintiff was sick.[2] Morgan depo. at 69. Upon his return to work on April 25, 2000, the plaintiff again requested to use a vacation day to cover his absence. Morgan depo. at 73-74. That same day, the plaintiff received training on the new attendance policy. Plaintiff depo. at 158. Although plaintiff had been allowed to retroactively apply vacation days to cover unexcused absences in the past, he did not know what conditions applied to doing so. Plaintiff depo. at 140. He also did not know if anyone else was allowed to use vacation time to cover prior absences. *Id*. at 150. Faulkner testified that such requests were routinely granted. Faulkner depo. at 38-39.

Morgan told plaintiff he would not be allowed to use a vacation day to cover the absence and would therefore be terminated. Plaintiff depo. at 156. Faulkner gave Morgan

---

[2]The defendant does not dispute that the plaintiff called in sick. Morgan explained if the plaintiff had not called in, he would have received two points, rather than the one he received. Morgan depo. at 69.

3

the request, who stated he could not accept it.[3]  Morgan depo. at 74; Faulkner depo. at 101. Plaintiff's last day of work for defendant was May 22, 2000. Morgan depo. at 116. Plaintiff asserts the new policy was applied to him by Morgan, even though it had not yet gone into effect. The defendant asserts the plaintiff was terminated under the old policy.

The plaintiff argues he was discriminated against by his termination because he is black and because he complained about being treated unfairly in the past.[4]  Plaintiff depo. at 55-59, 62-64. He also argues that he was treated differently than similarly situated white employees. *Id.* at 60. He stated Clay Hunt, Jennifer Bading, Bobby Glenn, John "B", Jack Armstrong, and a guy named Ray were all white people who "pointed out" but were not terminated. *Id.* at 60-61.

The plaintiff's performance reviews show that his attendance was consistently rated as "marginal." Plaintiff depo. at 164-174, defendant exhibits E-O. The plaintiff received

---

[3]Morgan stated a variety of reasons for his rejection of the vacation time request, such as that plaintiff did not ask him personally, and gave no reason that failure to grant vacation time would have caused personal hardship. Morgan depo. at 77. When Faulkner presented plaintiff's request to him, Morgan believed plaintiff was just trying to "cover a point. And I did not make it a practice just to cover points. If there is a good reason, there is a family emergency, a medical emergency, something that somebody has contact with me with, I may do that. None of that was the case with this absence." *Id.* at 78.

Faulkner testified that Morgan stated plaintiff was being terminated under the new policy. Faulkner depo. at 101-102, 106. However, he also testified he did not think this had anything to do with plaintiff's race. *Id.* at 108-109. In fact, he stated that he has never seen any incidents of racial discrimination while in defendant's employ and knows of none other than plaintiff's allegation. *Id.* at 109. He also stated that no discrimination takes place in upper management. *Id.* at 110-111.

[4]None of these incidents were listed in the plaintiff's EEOC charge. Plaintiff depo. at 79.

4

final written warnings for his accumulated points in April, 1998, August, 1999 and finally again on February 21, 2000. Plaintiff depo. at 170-171, 174, Morgan depo. at 40, 44.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

Plaintiff asserts that the above facts constitute race discrimination. The plaintiff does not specify whether his evidence is meant to constitute direct or circumstantial evidence of discrimination, but as the court can find no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply a three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).

The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was terminated; and (4) his employer treated similarly situated employees outside the protected classification more favorably. *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997); *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000). The court has carefully read the plaintiff and the defendants' evidentiary submissions. The parties do not dispute that the plaintiff meets the first three elements of his prima facie case. However, the court can find no evidence (as opposed to argument) that any employee outside the protected class was treated more favorably than the plaintiff.

7

The defendants assert that the plaintiff was terminated for violation of the attendance policy and being chronically absent. The plaintiff states white employees were not terminated in the same situation. The plaintiff cannot show that he has been treated differently than non-minority employees. Plaintiff listed white employees he believed were treated differently, but the defendant has provided evidence demonstrating these employees were also terminated for accumulating points. The plaintiff listed Bobby Glenn as a person who was treated differently from plaintiff. Faulkner testified Bobby Glenn was terminated due to points. Faulkner depo. at 85. Similarly, Jennifer Bading, named by plaintiff was terminated in June, 1999 for being absent three days without calling defendant. Defendant exhibit A, 1. Raymond Appiarus was laid off in November, 1999.[5] Defendant exhibit A, 2. John Williams was terminated in July, 2000 for violating the attendance policy with 8.75 occurences. Defendant exhibit A, 3. Jack Armstrong was terminated in August, 1999 for being absent four days without calling defendant. Defendant exhibit A, 4. Clay Hunt is still employed by defendant, but, unlike plaintiff, did not incur any more points after being given a final written warning. Morgan depo. at 98-99. Denise Smith, who was a white welder, was terminated with 6.5 points in February, 2000. Faulkner depo. at 112. Bradley Valentine was terminated in May, 2000 with 8 or 9 points. *Id*. at 112.

The court finds that the plaintiff was actually treated similarly to each of the white employees he claims received more favorable treatment. The plaintiff's personnel records

---

[5]Faulkner testified that Appiarus was terminated for accumulating eight points. Faulkner depo. at 89.

demonstrate that the plaintiff was repeatedly rated as "marginal" on attendance and had been given numerous "final warnings." Defendant exhibits E-P. In fact, in January, 2000, plaintiff already had eight points and was not terminated. Morgan depo. at 78. He was then allowed a retroactive vacation day in February. *Id.* at 56-57. Finally, the plaintiff was allowed to take two weeks vacation between the date he was told he would be terminated and his last day of work. Faulkner depo. at 145-146.

As such, the court finds that the plaintiff has failed to make out a prima facie case of discrimination as he cannot show any employee outside his protected class who was treated more favorably than him. This court need go no further in its analysis of the plaintiff's claim of race discrimination.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 10 day of June, 2002.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE